Judge Mills
delivered the opinion.
In this case the following facts appear to be satisfactorily established, to wit:
That in the years 1779 and 1780, Samuel Moore the ancestor of the appellant-'here, and complainant below, and *361 Harrod, ancestor of the female appellee, who, with her husband, ivas a defendant below, resided near together, an i being kinsmen, were in habió of intimacy. That on the 6th of November, 1779, Moore obtained from the court of commissioners a certificate of a ser lenient and a pre emption adjoining; and on the 24fb of June, 1780, entered his certificate of settlement with the surveyor.
That on the 20th of May, I78u, said Moore entered in the name of Harrod, or Harrod himself entered a treasury warrant of 1000 acres, including and around said settlement. That on the Iftth of July, 1780. said Moore having obtained a pre eraption warrant, either himself or some other person for him entered the same with the surveyor adjoining his settlement, as will be seen in the report of ibis case when formerly before this court, as to some other parties, in 1 Marsh. 140
That in Julv. 1780, Moore went on a campaign and was killed by the Indians on that ex leclition, in the month of August, 1780; and James Harrod survived him many years. Tiie appellant, the heir of Moore, was born late in the year 1779, and of course arrived at the age of twenty one years in the year 1800.
After the death of Moore, the ancestor, his widow, jointly with Harrod, administered on his estate. On the 19th of November, 1780, Harrod gave a writing, signed and sealed by him, binding himself to convey to the decedent* as if then living, in its obligatory part, “a good and lawful right to 500 acres of land, being half the pre-emption I laid a warrant on for said Moore, or half the land 1 shall obtain by virtue of said warrant, so soon as a patent shall come out for said land.”
On the 9th of April, 1781, Harrod caused a survey to be made on said treasury warrant of 1000 acres, in his own name, and a patent issued to him. But previously, on the 13th March, 1781, he withdrew the warrant, as entered previous to the death of Moore, and re entered it on the samt land which was covered by Moore’s pre-emption entry, and that was the same ground which was surveyed and patented.
On the 17th December, 1781, said Harrod in person, and at the same time presenting an order from the admin-istratrix, withdrew the entry of Moore on pre-emption warrant. Whether the order thus presented was genuine, is a point contested. He kept this warrant in his posses* *362 sioo till the guárdian of the appellant, 1188, obtained it ^rotn b*m> a^ter urg'n8 him to return it. And the guardian, supposing that the former withdrawal by the administrators was valid, returned it on the same land, and surveyed it, and obtained a grant of Modern date. This claim thus patented, was decided to be invalid, when opposed to 500 acres of Harrod’s treasury warrant on the same ground, in the reported case before cited, Harrod having sold and conveyed that quantity to innocent purchasers in the year 1785. The bill filed in this instance, claimed relief against these purchasers for their half, and also against Harrod’s heiress for the other half, and if there should be a failure in any part of this relief, compensation for the deficit against the heirs of Harrod. This compensation against Harrod’s heiress is what seems to be left for this court to decide. The court below having decreed a conveyance for the half unsold by Harrod in his lifetime, and then dismissed the bill.
There can be no doubt that Harrod was conversant and acquainted with all the acts of Moore, in acquiring his settlement and pre etnption, and that be knew the ground exactly which was intended to be located by him. After the acquisition of the certificate, and before any entry with the surveyor was made, Moore occasioned a private survey to be made to identify the ground and preclude others from embracing it until hfe procured a pre-emption warrant. With this survey Harrod was acquainted, and on this ground or that part of it covered by the pre-emption, as thus de-marked, Harrod attempted to locate his treasury warrant. Harrod appears to have bad the direction of the surveying of the settlement of Moore, and at the same surveyed bis treasury warrant on the ground embraced by the private Survey of the pre eruption. The treasury warrant, as located at the death of Moore, occupied partially, if not entirely, different ground from that on which it was placed by Harred, in his location, after the death of Moore, and it ivas placed on its first position by arrangement between Moore and Harrod. Besides, this withdrawal and relocation was after the writing executed by Harrod. It is now contended on the part of Moore’s heirs, that a clear contract is proved between Moore and Harrod with regard to the treasury warrant^ — tbat it belonged to Moore; or if it was not actually paid for, it was first located for Moore’s benefit to protect the ground from appropriation until a pre- *363 *mption warrant was gotten; — and that Harrod having relocated the treasury warrant, and attempted to destroy the pre-emplian warrant of Moore, and then giving his bond for tbe half after Moore’s death, and selling the residue, was a fraud and a breach of his contract, in a fraudulent manner, which now ought to subject his heiress to a decree for compensation for the land sold, and which was decided by the former decree of this court to be irrecoverable.
At common law, an heir wasnst bo’nd by the contracts or fraud of the ancestor, unless expressly named — a parol contract therefore cannot bind tbe heir: After the death of one oftbe parties to a parol agreement, & during- the infancy of his heir, the survivor cannot be permitted to change or modify it by writing.
We have not thought it necessary, from the conflicting mass of the testimony, to ascertain precisely the terms of the contract between Moore and Harrod, with relation to the treasury warrant. Nor do we conceive it necessary to decide how far the subsequent acts 6f Harrod, with regard to both the treasury and pre-emption warrants, viewed ei-r ther with or without relation to that contract, amount to a fraud. For however definite the contract may be, and precise its bearings — however gross the fraud of Harrod in his conduct may be, the liability of his heiress to render compensation for a breach of that contract, and to remunerate tbe injuries occasioned by the fraud, must he precisely the same as if there was no contract and no fraud. The law as it stood when Ibis contract was made, and until every act of Harrod, relied on as constituting the fraud, was done, did not subject the heiress either to the contracts or fraud of the ancestor, unless the heiress was expressly named ip the contract and bound by its terms. It is true that Har-rod expressly bound his heirs in tbe written contract alluded to, made after the death ol Moore, and binding him to convey one half tbe treasury warrant; but it is equally true, that a conveyance, in fulfilment of this contract, was decreed by the court, and actually made by Harrod’s heiress, and no claim on that bond is set up-for compensation. The bill does not claim the benefit of this writing, but sets up the former parol contract as giving, both in point of time and quantity of land, a superior claim to the whole, and if compensation is given at all, it must be op account of that contract, and Harrod’s subsequent acts in violation of it, as Harrod ought not to he permitted to change its terms or narrow it, after tbe death of Moore, during the infancy of bis heir, by the written contract. It is not, nor esn ii be pretended that Harrod expressly bound his heirs by this agreement. It therefore follows, that against his heirs no decree can be rendered, giving damages for the breach:— Nor wiil any of Harrod’? acts, done at that day, amounting *364 to ⅜ tort. descending upon his heiress, render her liable out *he assets descended The conveyance of one half the land had been decreed. This was all the heiress had, and all she was bound to.account for. Further relief must be?sought against the personal representative and cut ¿p (¡le personal estate of Harrod, which the heir of Moore has not joined in the suit. The court below, therefore, did right in refusing a decree against the heiress
Incases of fr ud or breach of wfi-r* Á» heir's not b'/.ioi, re-had * agai*'* the personal retíreseme-iv,,1,!11"
On a contract fo io-reUlerali*cÍ' no'⅛ had a-gaiiyst the le^al^estate3 invested* in the heir; re-meiy must gainst p'-rso-nal représen-tatives
brought fora specific cxe-cut ion of a contract, a and aco wey-anee made,, thu’ it is irre-fniss^be bilT yetihedecreé 4*'missing. no6, for that cause, here-versed.
agamstwhom no decree can be made is brought be, hefchouA cover costs*
There is another contract, set up in the bill, between Harrd and Moore, wi,’h regard to the location of lands near Gtecn river, In Moore for Harrod, one half of which was to belong to Moore Although there is proof shewing the services rendered, vet as there arc no titles shewn, oa which a decree against Harrod’s heiress can operate, the same obstacle lies against a decree for compensation We ^avc 1,01 thought it necessary to decide on the propriety of the rejection of evidence by the court below, which was excepted to. Because the evidence, if admitted, could not s*'^ Pri)ve ’he heiress liable.
The decision of the court, dismissing the bill after the conveyance was made, is also assigned for error. Although this is an informal mode of disposing of the suit, wherein Par< ’*>e Pra.Ver of the bill was granted; yet as it clearly appears of record that the whole object of the bill, so far as it could operate against the heiress of Harrod, to wit, a conveyance 0f aj] ⅛⅜ remainder of the land, was obtained, we cannot disturb the decree on this account,
1 he decree of that court with regard to costs in favor of Harrod’s heiress, is excepted to in this court. Although thts court has exercised a revising power over decisions in chancery with respect to costs, yet we cannot conceive that ⅛⅛ power ought to be extended too far. In this case it ap-Fears Moore had the possession of the land decreed to him. The heiress of Harrod does not, in the answer, quest ion his right to it, but alleges that a conveyance was made by her ailCest01' l°n£ before suit brought. This not appearing to be the case, one was decreed and accepted without resists aficfe on either side. It is evident that the whole contrd-vefsy *n ’h’s suit, on which the complainant below expended,and caused the defendants to expend great costs, has arisen out of the cotrtplaiiianl’s claim to the value of the remaining half of the 1000 acres covered by both warrant*» the claim for services rendered in locating Green river lands; during *H which controversy the coaiplaiuaht had *365 not one party before the court, against whom (Ms decree for compensation could be rendered. For this reason we cannot say that the decree for costs is not equitable.
Bibb for plaintiff, Hardin for defendant in error.
The decree must, therefore, be affirmed with costs.